## Clifton Country Rd. Assoc. LLC v Malta Land II B LLC

2025 NY Slip Op 30710(U)

March 3, 2025

Supreme Court, Saratoga County

Docket Number: Index No. EF20232970

Judge: Richard A. Kupferman

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

STATE OF NEW YORK
SUPREME COURT     COUNTY OF SARATOGA

---

**CLIFTON COUNTRY ROAD ASSOCIATES LLC,**

           Plaintiff,

- against -

**MALTA LAND II B LLC,**

           Defendant.

---

**Decision & Order**

Index No.: EF20232970

Appearances:

Peter A. Mahler, Esq.
Peter J. Sluka, Esq.
Farrell Fritz, P.C.
622 Third Avenue, Suite 37200
New York, New York 10017
*Attorneys for the Plaintiff*

Nicholas J. Faso, Esq.
Cullen & Dykman LLP
80 State Street, Suite 900
Albany, New York 12207
*Attorneys for the Defendant*

Christopher F. Lyon, Esq.
Goldberg Segalla LLP
711 3rd Avenue, Suite 1900
New York, New York 10017
*Attorneys for Non-Party,*
    *Teal, Becker & Chiaramonte CPAs P.C.*

KUPFERMAN, J.,

In this action, the plaintiff is seeking to recover the sum of $591,541.32 from the defendant based on a series of transfers made between December 2018 and April 2019. The transfers were made by the plaintiff to a non-party LLC for a total of $1,051,900.00. The complaint alleges that two individuals, Robert Miller and Larry Becker, were co-managers of the plaintiff and that they "agreed to cause and did cause" the making of these "loans" and their subsequent assumption.

1

The defendant (managed by Becker) allegedly assumed half of the loans in April 2019, and the other half was assumed by another non-party LLC (managed by Miller). The loans and their assumption are apparently not reflected in any written agreement or promissory note. Rather, the agreements were either made orally and/or are based on the parties' conduct. As evidence of the loans and assumption, the plaintiff is relying on entries allegedly made by Becker in the parties' accounting records and tax returns. The defendant has disputed the debt and contends that the parties' course of dealing refutes the plaintiff's understanding of the terms and enforceability of the alleged loans.

The parties have each filed a motion relating to discovery. On the first motion, the defendant seeks to compel the plaintiff and a non-party accounting firm to provide certain information and records. On the second motion, the plaintiff seeks to quash subpoenas seeking documents and testimony from four other witnesses.

## Motion No. 1

CPLR 3101 requires "full disclosure of all matter material and necessary in the prosecution or defense of an action" (CPLR 3101[a]). This has been interpreted as requiring the disclosure of relevant information and therefore includes "any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity" (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968]; see also Forman v Henkin, 30 NY3d 656, 661 [2018]). "Furthermore, pretrial disclosure extends not only to admissible proof but also to testimony or documents which may lead to the disclosure of admissible proof, including material which might be used in cross-examination" (Polygram Holding, Inc. v Cafaro, 42 AD3d 339, 341 [1st Dept 2007] [internal quotation marks, brackets, and citations omitted]).

2

Prior to compelling disclosure, the Court must consider the competing interests involved and weigh the need for the disclosure against the burdens imposed by the discovery demands (see Forman, 30 NY3d at 661-662; O'Neill v Oakgrove Constr., 71 NY2d 521, 529 [1988]; see also CPLR 3103[a]). Each dispute is evaluated on "a case-by-case basis with due regard for the strong policy supporting open disclosure" (Forman, 30 NY3d at 662, quoting Andon v 302-304 Mott St. Assoc., 94 NY2d 740, 747 [2000]).

Interrogatory. The defendant seeks to compel the plaintiff to respond to Interrogatory No. 11.[1] This demand seeks information regarding the treatment of other transfers of funds ("loans") between Miller and Becker's entities (referred to as the "Windsor Companies") and the entries recorded in the books and records for these other loans. The defendant contends that this information concerns the parties' course of dealing and is discoverable under the case law.

Section 223(1) of the Restatement (Second) of Contracts defines a course of dealing as "a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." The Restatement further provides that "a course of dealing between the parties gives meaning to or supplements or qualifies their agreement" unless otherwise agreed (Restatement [Second] of Contracts, § 223[2]; see also id. § 203 [explaining the standards of preference in interpretation]; Liberty Equity Restoration Corp. v Pil Soung Park, 160 AD3d 628, 631 [2d Dept 2018] [holding that the parties' course of dealing was admissible to supplement and interpret the terms of the parties' agreements]; Polygram Holding, Inc., 42 AD3d at 340-341; Devito v Benjamin, 243 AD2d 600, 601 [2d Dept 1997]).

---

[1] The interrogatory requests the plaintiff to explain "every instance in which a transfer of funds between a Windsor Company and another Windsor Company was described in either Windsor Company's books and records as a 'loan' or by 'due to,' 'due from,' or similar journal entries."

3

Here, several factors justify compelling the disclosure of this information. Among other things, the alleged loans were not memorialized in a written agreement. Rather, the plaintiff's claim relies entirely on extrinsic evidence. In addition, the defendant disputes that it owes the debt. The defendant alleges that this action is part of a larger effort by Miller to squeeze Becker from their joint ventures and acquire Becker's business interests for less than fair value.[2] The defendant further alleges that the terms of the loan asserted by the plaintiff are inconsistent with other similar inter-company loans made between Miller and Becker's entities.

The plaintiff's own discovery responses also indicate that these other inter-company loans may be relevant to the issues in this case or lead to admissible evidence. In particular, the plaintiff's interrogatory responses state that the alleged loans were "similar in form to other inter-company debt obligations" among "entities jointly owned by Miller and Becker" (Interrogatory Response Nos. 4 & 5). In addition, Miller's testimony seems to suggest that his understanding of the agreement was based in part on a course of dealing and the treatment of other inter-company loans regarding the Windsor Companies (see Miller's Dep. Trans., at pp. 18-20, 70-73, 79-82, 132-136).

Contrary to the plaintiff's contention, this discovery may not be withheld based on the plaintiff's general assertion that Becker, through his control and maintenance of the books and records, initiated and disposed of inter-company loans. At best, this merely presents an additional issue in the case subject to discovery. Moreover, all these issues (including the terms of the loans, their enforceability, and the impact of Becker's alleged rogue conduct) may be presented for adjudication after discovery is completed and a full record is developed for consideration.

---

[2] Notably, Becker had a 30% interest in the plaintiff until Miller noticed a statutory merger and required Becker to sell his membership interest in 2023. While the plaintiff contends that the purchase price included the value of the loans, the defendant has disputed this.

4

Such disclosure would also not impose any undue burden or prejudice on the plaintiff. The information is limited in scope and time and may be readily obtained through a basic review of computer data and accounting books. To the extent the plaintiff desires, it may further lessen its burden when responding to the interrogatory by providing the information in its original format rather than creating a new document/itemization.

Accordingly, the plaintiff is directed to respond to Interrogatory No. 11 and/or provide the defendant with copies of the records containing the information requested.[3]

"Loan Payable-Becker/Miller." The defendant also seeks disclosure regarding an alleged loan between the plaintiff and Miller and Becker. The defendant contends that this loan was removed from the corporate books and that this reflects the parties' course of dealing and practice. While the Court is not entirely persuaded that these records will support the defendant's position, the additional information/records regarding this transaction could arguably assist the Court in better understanding the transaction and resolving any uncertainty over the nature of this other alleged debt and its forgiveness. This will assist the Court in determining whether the other alleged debt and its forgiveness have any relevance to the loans at issue in this case.

Moreover, given that Becker would be entitled to this information regardless (as the transaction apparently involved him and his capital account), the disclosure of this matter will not prejudice the plaintiff. Accordingly, the plaintiff is directed to provide these records.

_____

[3] Even though these other loans involved other entities owned/managed by Miller and Becker (rather than loans between the parties), this distinction is immaterial based on the facts presented. In particular, Miller and Becker allegedly arranged for, engaged in, and/or consented to the subject transactions on behalf of the parties. In fact, the complaint itself alleges that Miller and Becker "agreed to" and "caused" the making of the subject loans and the assumption of the debt. As such, the intent of Miller and Becker at the time (including their intent based on their prior course of dealings) may be deemed to be the intent of the parties.

5

The Plaintiff's Tax Returns. The defendant also seeks the plaintiff's tax return for 2023 (already produced) and internal communications relating to the plaintiff's tax filing for 2023 (not yet produced). As the plaintiff is relying on its tax returns (allegedly prepared by Becker) to prove its claim, the communications relating to the tax filing are relevant and discoverable. Indeed, paragraphs 11 of the complaint directly puts in issue the content and preparation of the plaintiff's tax returns. It alleges, as follows:

> "At all relevant times, **Plaintiff filed tax returns reporting the Defendant's debt obligation to Plaintiff** for the Demand Loan consistent with the entries in the books and records of Plaintiff caused to be made by Becker" (emphasis added).

Again, the plaintiff will not incur any unreasonable burden to produce this information. The records should be readily available and easy to reproduce.

Accordingly, the plaintiff is directed to produce any records responsive to this request that have not yet been disclosed. Notwithstanding, the plaintiff may redact and/or withhold any records created after September 2023 if it considers them unrelated to the alleged loans or privileged, provided that the plaintiff clearly indicates the redactions and provides the defendant with a log of any documents withheld on these grounds.

All Communications with the Accounting Firm. The defendant also seeks to compel the plaintiff to produce all its communication with the accounting firm. Communications regarding the alleged loan, other similar loans, and the plaintiff's tax returns (discussed above) are relevant and discoverable. For the same reasons discussed above, the Court directs the plaintiff to produce those communications in its custody, possession, or control regarding the "Loan Payable-Becker/Miller," Becker, and the plaintiff's 2023 tax returns, subject to the same caveat discussed above regarding the redaction and/or withholding of records. The remainder of this request seeking "all communications" is otherwise denied, without prejudice, as overbroad.

6

[* 6]

<u>The Subpoena Served on the Accounting Firm</u>. The defendant also seeks to compel the accounting firm to respond to a subpoena requesting all documents and communications relating to the alleged loan; the plaintiff's 2023 tax returns; the 2023 Scheduled K-1s for the plaintiff; similar documents for another LLC that has a similar name to the plaintiff ("CCRAL"); and all documents and communications with Miller relating to Becker.

The accounting firm has objected to the subpoena on the grounds that 26 USC § 7216 and Treasury Regulation § 301.7216-1 prohibit it from making the production without Miller's consent or a court order. The accounting firm has further proposed language "to satisfy the requirements of Section 7216." The defendant has not objected to the use of this language or the production method proposed by the accounting firm. The Court therefore grants this part of the motion subject to the language and conditions requested by the accounting firm.

Further, although the plaintiff has objected to some of the items requested in the subpoena, the Court has already overruled the plaintiff's objections regarding the disclosure of its 2023 tax documents and communications regarding those documents (discussed above). To the extent that the subpoena seeks documents regarding CCRAL and communications relating to Becker, the parties should engage in good faith negotiations to determine whether these requests may be further narrowed. In the event the parties and the accounting firm cannot agree, the accounting firm may disclose all the other records requested, while withholding documents regarding CCRAL and the communications with Miller regarding Becker, provided it prepares and distributes to the parties a log of any such records withheld on this ground.

7

## Motion No. 2

On Motion No. 2, the plaintiff seeks to quash subpoenas for documents and testimony served on four of the plaintiff's current members, including two of Miller's children.

Regarding Miller's children (Robert Miller Jr. and Timothy Miller), the plaintiff's interrogatory responses identify them as persons (1) who have knowledge of information that is material and necessary to the subject action, and (2) who have possession, custody, or control over documents that are material and necessary to the subject matter of this action. As such, that part of the motion seeking to quash the subpoenas served on Miller's children is denied.

Turning to the remaining two witnesses (Judith Tate and Lestos LTD), they have asserted that they lack records and personal knowledge regarding the alleged loans. Nonetheless, they are interested in this litigation and have submitted affidavits in support of the plaintiff's motion. Assuming for the sake of argument that they do not possess any relevant documents, there is no burden imposed on them to state this in a formal response to the subpoena seeking documents. Moreover, given their interests in the plaintiff and the amount being sought against the defendant, the defendant may depose these witnesses to ascertain whether they truly lack knowledge relevant to this action. To mitigate against the alleged burden imposed on these witnesses, the parties are encouraged to accommodate these two witnesses and allow for their depositions to be conducted remotely (i.e., through the internet with video available), if requested in advance by these witnesses.

It is therefore,

**ORDERED**, that the defendant's motion is **GRANTED** in part and **DENIED** in part, as set forth above; and it is further

**ORDERED**, that the plaintiff's motion is **DENIED**; and it is further

**ORDERED**, that the defendant's counsel shall forthwith submit an Order authorizing disclosure from the accounting firm, which shall include the specific language requested by the accounting firm.

This shall constitute the Decision and Order of the Court. No costs are awarded to any party. The Court is hereby uploading the original decision into the NYSCEF system for filing and entry by the County Clerk. The Court further directs the parties to serve notice of entry in accordance with the Local Protocols for Electronic Filing for Saratoga County.

So-Ordered.

Dated: March 3, 2025
at Ballston Spa, New York

_____
HON. RICHARD A. KUPFERMAN
Justice Supreme Court

Papers Considered:
NYSCEF Doc. Nos.: 29-92

9